**STATE of Iowa, Appellee,**

v.

**Fredric William WISSING, Appellant.**

**No. 94–50.**

Supreme Court of Iowa.

March 29, 1995.

Linda Del Gallo, State Appellate Defender, and Kevin Cmelik, Asst. State Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Thomas G. Fisher, Jr., Asst. Atty. Gen., Thomas S. Mullin, County Attorney, and Clinton L. Spurrier, Asst. County Atty., for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LAVORATO, ANDREASEN, and TERNUS, JJ.

ANDREASEN, Justice.

The defendant appeals his convictions of involuntary manslaughter and vehicular homicide, in violation of Iowa Code sections 707.5 and 707.6A (1993). He asserts he received ineffective assistance of counsel from his trial attorney. We affirm as modified.

## I. *Background.*

From the evidence at trial, a jury could find the following facts. The defendant, Fredric William Wissing, was driving a pickup truck in the early morning hours of August 26, 1993. Michele Rydstrom was a passenger. At approximately 1:30 a.m. uniformed Sioux City police officer Douglas Fay spotted the truck driven by Wissing run a red light. After a short chase, Fay pulled the truck over, got out of his patrol car, and approached the truck. When he asked to see Wissing's driver's license, Wissing drove away. Fay ran back to his marked patrol car and gave chase with the car's lights and siren running. The chase continued for several blocks. Wissing ran several red lights during the chase, but he did slow slightly while crossing some intersections. Finally, Wissing's vehicle struck a curb, raising a cloud of dust. When the dust settled, Fay discovered the truck had smashed against a tree. He found Rydstrom lying outside the truck with no detectable pulse. She died as a result of the injuries she received in the accident.

The results of blood tests indicated Wissing's blood alcohol level was .221 and Rydstrom's was .296. An accident reconstruction approximated the speed of the truck at the time of impact to be 62.71 miles per hour. The speed limit on the street where the chase took place was thirty miles per hour. Wissing admits he was speeding and attempting to elude officer Fay, but he claims Rydstrom caused the accident by grabbing the wheel to help him avoid hitting a dog in the road.

The jury found Wissing guilty of involuntary manslaughter and vehicular homicide. Iowa Code §§ 707.5(1), 707.6A(1). At posttrial proceeding, Wissing admitted he had two prior felony convictions. The court found him to be a habitual offender. Iowa Code § 902.9(2). Judgments of conviction were entered against Wissing, and he was sentenced to a term not to exceed fifteen years for each felony with the sentences to run concurrently. On appeal, he asserts he did not receive effective assistance of counsel. He claims counsel failed to secure the appropriate jury instruction regarding intervening and superseding causes and that counsel should have moved to dismiss the involuntary manslaughter charge because, by adopting Iowa Code section 707.6A, the legislature impliedly repealed section 707.5.

## II. *Scope of Review.*

Because Wissing asserts his constitutional right to a fair trial was violated, we make an evaluation based on the totality of the circumstances. This is equivalent to a de novo review. *Morgan v. State,* 469 N.W.2d 419, 426 (Iowa 1991). Although we have held that claims for ineffective assistance of counsel are better reserved for postconviction relief proceedings, "[w]e have, however, reviewed such claims on direct appeal where the evidence available is sufficient to establish the validity of the claim." *State v. Bumpus,* 459 N.W.2d 619, 627 (Iowa 1990) (citation omitted).

## III. *Ineffective Assistance of Counsel.*

Wissing bears the burden of proving by a preponderance of the evidence that he received ineffective assistance of counsel. *State v. McKettrick,* 480 N.W.2d 52, 55 (Iowa 1992). He must prove two elements: First,

counsel failed to perform an essential duty, and second, he was prejudiced by counsel's omission. *Morgan,* 469 N.W.2d at 426; *Bumpus,* 459 N.W.2d at 627. The test for the first element is whether the attorney's performance was outside the range of normal competency. *Morgan,* 469 N.W.2d at 426. The test for the second element is whether there is "a reasonable probability that but for his trial attorney's unprofessional errors, the resulting conviction and sentence would have been different." *Bumpus,* 459 N.W.2d at 627. A reasonable probability is "one sufficient to undermine confidence in the outcome." *Id.* "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692–93 (1984).

■ Wissing's burden is a difficult one to meet. "Improvident trial strategy, miscalculated tactics, and mistakes in judgment do not necessarily amount to ineffective assistance of counsel." *McKettrick,* 480 N.W.2d at 55. Courts generally presume that counsel is competent.

[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694–95 (citation omitted). However, we need not determine whether counsel's performance is deficient before examining the prejudice element. *Id.; Bumpus,* 459 N.W.2d at 627. If sufficient prejudice is not shown, we need not address whether counsel breached an essential duty.

A. Jury Instructions.

Wissing contends he received ineffective assistance of counsel when his attorney agreed to the submission of a jury instruction which did not include the terms "superseding" or "intervening." Instead, Wissing's attorney and the county attorney agreed to submission of an instruction which used lay language to incorporate the concepts of superseding and intervening causation. The instruction stated:

The State is required to prove by evidence beyond a reasonable doubt that the defendant's act or acts unintentionally caused the death of Michele R. Rydstrom.

The defendant contends that the act or acts of Michele R. Rydstrom caused her death.

If the act or acts of Michele R. Rydstrom interrupted the natural course of events started by the act or acts of the defendant and her act or acts were the only cause of her death, then the defendant did not cause the death of Michele R. Rydstrom and he must be found not guilty as to the charges of Vehicular Homicide and Involuntary Manslaughter.

Wissing's theory of defense was that Rydstrom caused the accident by grabbing the steering wheel to avoid hitting a dog in the road. Therefore, he argues the instruction should have contained a discussion or definition of intervening and superseding causes. He asserts a question asked by the jury demonstrates it did not fully understand the causation issue. The jury asked the court:

Regarding the word "only":

If we conclude that both parties contributed to the accident (for example equally) do the words "her acts were the *only* cause of her death" imply that he should not be found guilty of vehic hom and invol mansl. per instruction # 16? In other words, must she have caused 100% for a not guilty verdict?

The court instructed the jury to reread the instruction.

■ The definition of "proximate cause" in a criminal case is the same as in a civil case. *State v. Hubka,* 480 N.W.2d 867, 869 (Iowa 1992). In the criminal context, proximate cause "serves as a requirement that there be a sufficient causal relationship between the defendant's conduct and a proscribed harm to hold him criminally responsible." *State v. Marti,* 290 N.W.2d 570, 584 (Iowa 1980). The defendant's conduct is the proximate cause of another's death

if (1) [his or] her conduct is a "substantial factor" in bringing about the harm and (2) there is no other rule of law relieving the defendant of liability because of the manner in which [his or] her conduct resulted in the harm.

*Hubka,* 480 N.W.2d at 869. A criminal defendant can be relieved of criminal responsibility if an intervening event breaks the chain of causal connection between the defendant's actions and the victim's death. *Id.* However, for a factor other than the defendant's act to relieve the defendant of criminal responsibility for homicide, the other factor must be the *sole* proximate cause of death. *Id.*

 The instruction given used plain language to convey the concepts Wissing now asserts should have been defined. The ultimate question is whether Rydstrom's actions could be considered the *sole* cause of her death, and the instruction explained this. The instruction was correct. Because the instruction correctly incorporated the concepts of intervening and superseding causation, this case is unlike *State v. Cunningham,* 463 N.W.2d 887 (Iowa App.1990), where the instruction did not clearly convey these concepts. Wissing has not proven he was prejudiced by his counsel's decision to agree to the instruction.

### B. Failure to Move to Dismiss Involuntary Manslaughter.

Wissing argues that his trial attorney should have moved to dismiss the involuntary manslaughter charge. He claims that by adopting section 707.6A dealing with vehicular homicide, the legislature impliedly repealed part of the involuntary manslaughter statute. Wissing challenges his multiple convictions which he claims arise from a single act. He argues the legislature did not intend multiple punishments for the same act.

The relevant parts of the vehicular homicide statute state:

1. A person commits a class "C" felony when the person unintentionally causes the death of another by either of the following means:

a. Operating a motor vehicle while under the influence of alcohol or other drug or in a combination of such substances or while having an alcohol concentration, as defined in section 321J.1, subsection 1, of .10 or more....

b. Driving a motor vehicle in a reckless manner with willful or wanton disregard for the safety of persons or property, in violation of section 321.277.

2. A person commits a class "D" felony when the person unintentionally causes the death of another by operating a motor vehicle in any of the following manners:

a. Drag racing, in violation of section 321.278.

b. Eluding or attempting to elude a pursuing law enforcement vehicle, in violation of section 321.279.

Iowa Code § 707.6A.

The relevant portions of the involuntary manslaughter statute provide:

1. A person commits a class "D" felony when the person unintentionally causes the death of another person by the commission of a public offense other than a forcible felony or escape.

2. A person commits an aggravated misdemeanor when the person unintentionally causes the death of another person by the commission of an act in a manner likely to cause death or serious injury.

*Id.* § 707.5.

 Wissing's challenge raises double jeopardy principles. The Double Jeopardy Clause protects against three things: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. U.S. Const. amend. V; *State v. Aguiar–Corona,* 508 N.W.2d 698, 701 (Iowa 1993). Because this case does not involve successive prosecution, we focus our attention upon the third issue. "Because power to prescribe crimes and determine punishment is vested with the legislature, the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *State v. Franzen,* 495 N.W.2d 714, 716 (Iowa 1993). One way of determining whether the legislature intended multiple punishments based on a single act is by

applying the rule of statutory construction articulated in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932):

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.

■ Wissing's conduct on the morning of August 26, 1993 amounted to three wrongful acts. He was driving while intoxicated, attempting to elude a police officer, and speeding. If he unintentionally caused the death of another, each of these acts alone would likely constitute the basis for a conviction under either the vehicular homicide or involuntary manslaughter statutes. Wissing was charged for vehicular homicide on the basis of his acts of "[o]perating a motor vehicle while under the influence of alcohol," Iowa Code § 707.6A(1)(a), and "[d]riving a motor vehicle in a reckless manner with willful or wanton disregard for the safety of persons or property," Iowa Code § 707.6A(1)(b). He was charged with involuntary manslaughter on the basis of the public offense of eluding a police vehicle. Iowa Code § 707.5(1) (eluding a police vehicle is prohibited by Iowa Code § 321.279).

Under these criminal charges, to prove Wissing guilty of vehicular homicide the State had to prove:

(1)(a) He operated a motor vehicle while under the influence of alcohol, or while having an alcohol concentration of .10 or more; or

(b) He drove a motor vehicle in a reckless manner, and

(2) His acts unintentionally caused the death of Michele R. Rydstrom.

On the other hand, to prove him guilty of involuntary manslaughter the State had to prove:

(1) He recklessly committed the crime of Eluding a Law Enforcement Vehicle, and

(2) When he committed the crime, he unintentionally caused the death of Michele R. Rydstrom.

Therefore, each count Wissing was convicted of required proof of an additional fact which the other did not. The two offenses did not constitute the same crime under the *Blockburger* test. If the offenses are not the same crime under *Blockburger,* there is a presumption that multiple punishments can be assessed. *Aguiar–Corona,* 508 N.W.2d at 701. The court did not violate double jeopardy principles in submitting both involuntary manslaughter and vehicular homicide to the jury.

■ Wissing argues that he cannot be convicted under both statutes because section 707.6A impliedly repeals section 707.5 for any unintentional death caused by a motor vehicle. The *Blockburger* test is merely a rule of statutory construction designed to discern legislative intent. *McKettrick,* 480 N.W.2d at 58. Therefore, "the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent." *Id.* He asserts the legislature did not intend to make the same act illegal under two separate statutes. He contends that the special provisions of the vehicular homicide statute are controlling over the general involuntary manslaughter provisions. *See* Iowa Code § 4.7.

Although the legislature generally does not cover the same ground in two separate statutes, when it does the special statute is considered an exception to the general statute only if the two statutes cannot be reconciled. *State v. Peters,* 525 N.W.2d 854, 857 (Iowa 1994) (citing *State v. Perry,* 440 N.W.2d 389, 390 (Iowa 1989)). There is a presumption against the implied repeal of a statute. *Dan Dugan Transp. Co. v. Worth County,* 243 N.W.2d 655, 657 (Iowa 1976). We have stated:

> The fact that two statutes provide different criminal penalties for essentially the same conduct is no justification for taking liberties with unequivocal statutory language. The adoption of one statute does not implicitly repeal another statute whenever a defendant's conduct might violate both. It is not enough to show the two

statutes produce different results when applied to the same factual situation. The legislative intent to repeal must be manifest in the "positive repugnancy between the provisions."

*Perry,* 440 N.W.2d at 391 (citation omitted). If the legislature had intended section 707.6A to be the only statute addressing an unintentional death caused by a driver of a motor vehicle, it could easily have said so. *See Peters,* 525 N.W.2d at 858.

The fact that Wissing *could* have been charged under either statute on the basis of the same wrongful act does not show the legislature intended to repeal part of the involuntary manslaughter statute. When a single act violates more than one criminal statute, the prosecutor may choose which charge to file, even if the two offenses call for different punishments. *Id.* at 859.

We conclude Wissing was not charged under two separate statutes for the same act. The legislature did not intend to impliedly repeal part of section 707.5 when it passed section 707.6A. Because Wissing was appropriately convicted under both statutes on the basis of separate wrongful acts, he has failed to show he suffered prejudice as a result of his attorney's failure to move to dismiss the involuntary manslaughter charge.

At sentencing counsel for Wissing urged the conviction of involuntary manslaughter should be "subsumed" under vehicular homicide and that he should only be sentenced on the vehicular homicide count. Although Wissing has not challenged on appeal the two convictions arising from only one homicide, we believe this issue should be addressed.

 Wissing was charged in separate counts of both vehicular homicide and involuntary manslaughter. Because each offense requires proof of an additional fact which the other does not, they are separate offenses and the court properly instructed the jury as to each count. Generally, a defendant who is convicted of distinct offenses may be punished for both. However, where the offenses arise from one homicide, we permit sentencing on only one of the homicide offenses. *State v. Gilroy,* 199 N.W.2d 63, 68 (Iowa 1972) (two sentences imposed as the result of

one homicide cannot be allowed to stand); *compare with State v. Criswell,* 242 N.W.2d 259, 261 (Iowa 1976) (distinguishing *Gilroy* and permitting consecutive sentences based on two separate non-homicide offenses).

The judgment entered upon conviction of involuntary manslaughter is annulled and set aside.

We affirm, save and except as modified above.

**AFFIRMED AS MODIFIED.**