**STATE of Iowa, Plaintiff–Appellee,**

v.

**Christopher Wesley FARNUM, Defendant–Appellant.**

No. 95–0893.

Court of Appeals of Iowa.

Aug. 30, 1996.

Jon M. Kinnamon of Kinnamon, Kinnamon, Russo & Meyer, Cedar Rapids, for defendant-appellant.

Thomas J. Miller, Attorney General, Robert P. Ewald, Assistant Attorney General, J. Patrick White, County Attorney, and Janet M. Lyness, Assistant County Attorney, for plaintiff-appellee.

Considered by SACKETT, C.J., and HABHAB and STREIT, JJ.

HABHAB, Judge.

Defendant Christopher Farnum was convicted of third-degree sexual abuse in violation of Iowa Code section 709.4 (1993). On appeal he argues: 1) there was insufficient evidence to support the conviction; 2) the trial court erred in allowing witnesses to testify about whether an assault had occurred, the elements of the offense, and the credibility of the victim; and 3) his trial counsel was ineffective. We affirm.

■ *I. Sufficiency of the Evidence.* Defendant argues there was insufficient evidence to support his conviction of third-degree sexual abuse. He asserts the victim's testimony was self-contradictory and inconsistent, and in the absence of scientific evidence or corroboration, he should have been acquitted.

When reviewing criminal convictions for sufficiency of the evidence, we review the evidence in a light most favorable to the State. *State v. McGrew*, 515 N.W.2d 36, 37 (Iowa 1994). A conviction is reversed only if there is no substantial evidence in the record supporting the verdict or the verdict is clearly against the weight of the evidence. *Id.* at 37–38. Substantial evidence is evidence which could convince a rational trier of fact the defendant is guilty of the crime charged beyond a reasonable doubt. *Id.* at 38. A fair inference of guilt with respect to each element of the crime charged is sufficient to uphold a verdict. *Id.* We consider all of the evidence, not merely that supportive of the conviction, in determining the sufficiency of the evidence to support a guilty verdict. *State v. Robinson*, 288 N.W.2d 337, 340 (Iowa 1980).

A review of the record reveals there was substantial evidence to support the conviction. The victim, her boyfriend Demetri, defendant, and his date Brenda, had visited a bar on the night of June 30, 1994, and in the early morning hours of July 1, 1994. The victim became very intoxicated, and witnesses testified she was drunk and vomited several times.

The group returned to Demetri's apartment where Demetri placed the victim on his bed. He testified she had "passed out" and he put her in bed fully-clothed. Demetri left the apartment to visit other friends. Defen-

dant and his date remained in the living room of the apartment.

The victim testified she remembered telling Demetri she was not feeling well while they were still at the bar. The next thing she remembered was being awakened in Demetri's apartment with defendant on top of her. Her shorts and underwear had been removed and defendant's penis was in her vagina. The victim testified that when she tried to speak, defendant covered her mouth and nose with his hand and she had trouble breathing. The victim also described defendant's attempt to place his penis in her mouth. During the incident defendant kept telling the victim, "Don't tell Demetri." The victim claimed she tried to use her hands to force defendant off of her but could not.

After defendant had left the apartment, the victim attempted to reach Demetri by phone. While attempting to do so, Demetri returned to the apartment and found the victim "shaking and crying uncontrollably." The police were called and they testified they found the victim crying, shaking, and scared. The victim was taken to a hospital for an examination. Some bruises were found on her thighs and shin, although the cause of the bruises or when they had been incurred could not be determined by the doctor.

Defendant does not deny having had sexual intercourse with the victim at the apartment in the early morning hours of July 1. However, he testified he had three separate encounters with the victim and all were initiated by her and with her consent.

Defendant's date, Brenda, was in the living room of the apartment. She testified she heard no noises, cries, or screams coming from the bedroom where the victim was. Brenda did testify defendant left her twice to go the bathroom and the first time he was gone eight or nine minutes. Brenda confirmed the victim was "wasted" and could not stand, walk or talk whey they left the bar and returned to the apartment.

There was sufficient evidence from which the jury could find the victim was incapacitated by intoxication and could not consent to sexual intercourse with defendant. Likewise, the jury could find that after the victim

awakened she did not want to have sex with defendant but he continued to do so by force and against her will. Defendant argues the victim's version of the events was not corroborated. Other witnesses testified about the victim's intoxication and that she was "passed out" when her boyfriend left the apartment. While there are no witnesses to corroborate the victim's account of the actual sexual abuse, none are required. "The law has abandoned any notion that a rape victim's accusation must be corroborated." *State v. Knox*, 536 N.W.2d 735, 742 (Iowa 1995).

In challenging the sufficiency of the evidence, defendant contends there was contradictory evidence. The victim and defendant testified about two very different versions of the events which transpired on July 1. A jury is free to accept all, part, or none of a witness's testimony. *See State v. Anderson*, 517 N.W.2d 208, 211 (Iowa 1994). A jury is in the best position to judge whom and what to believe. *Knox*, 536 N.W.2d at 742. It was well within the evidence for the jury to believe the victim's testimony.

Defendant argues there was a lack of physical evidence to support his conviction. The testimony of the doctor who examined the victim established it is not unusual for there not to be evidence of physical trauma in a sexual assault. The victim did have some bruises on her thighs and shin which she did not recall having before that night. Given the significant disparity in the size of the victim (5′6″, 120 pounds) and defendant (6′4″, 225 pounds), it is likely any effort by the victim to strongly resist would have been futile. Furthermore, the victim's ability to resist was probably compromised by her intoxicated state.

Finally, defendant argues his date, Brenda, was in the apartment and did not hear any noises to indicate he was assaulting the victim. Brenda stayed in the living room, and the jury may have concluded any noises the victim or defendant made in the bedroom could have been too faint to be heard.

We have considered all of defendant's arguments challenging the sufficiency of the evidence and find there was substantial evidence which could convince a rational trier of

fact defendant was guilty of the crime charged beyond a reasonable doubt.

■ **II. Testimony of Police Officers.** At trial, Police Officer Lippold was questioned about being dispatched to investigate a report of sexual assault. Defendant objected when the officer's response indicated a female had been "assaulted." The court sustained the objection.[1] On appeal, defendant cites seven subsequent pieces of testimony which he claims were also objectionable because they allowed Officers Lippold and Krei to offer opinions about whether the victim had been sexually assaulted, the elements of the crime, and the credibility of the victim.

With respect to the fourth[2] and seventh[3] pieces of testimony, defendant objected and the objections were sustained.[4] Defendant presents nothing further for us to review with respect to this testimony. With respect to the remaining five pieces of testimony, defendant claims they should not have been admitted given that the court had initially sustained his objection to Officer Lippold's characterization of the offense as an assault. Defendant did not object at trial to any of the subsequent five pieces of testimony which he now claims are objectionable.

"The rule is well established that failure to object to evidence or move to strike the same at the time the record is made and when the grounds for objection or motion to strike are first apparent precludes the party from asserting on appeal admission of evidence was error." *State v. King*, 225 N.W.2d 337, 341 (Iowa 1975). Error which is not preserved is waived. *See State v. Heacock*, 521 N.W.2d 707, 710 (Iowa 1994). We find error was not preserved and decline to address defendant's arguments about the inadmissibility of the five pieces of testimony to which defendant did not object at trial.

**III. Ineffective Assistance of Counsel.** Defendant claims his trial counsel was ineffective. He contends his counsel should have objected to jury instructions number nine and fourteen; his counsel should have objected to the police officers' testimony addressed previously in division II of this opinion; and his counsel should have objected to the submission of two separate and alternative theories of sexual abuse.

A defendant bears the burden of proving by a preponderance of the evidence he received ineffective assistance of counsel. *State v. Wissing*, 528 N.W.2d 561, 563 (Iowa 1995). He must prove two elements: 1) counsel failed to perform an essential duty; and 2) he was prejudiced by counsel's omission. *Id.* at 563–64. The test for the first element is whether the attorney's performance was outside the range of normal competency. *Id.* at 564. The test for the second element is whether there is a reasonable

---

1. Q. And what information did you have when you went to that location? A. All I had at that time, there was a female that had been assaulted at this residence. The assailant was no longer there.
   DEFENSE COUNSEL: Your Honor, I object to the officer using the language that the female who had been assaulted. I don't believe he's in a position to decide whether or not she had been assaulted.
   THE COURT: Sustained.

2. Q. After you spoke with her, what decision did you make in this case?
   A. It was clear an assault had taken place.
   DEFENSE COUNSEL: I object to that, your Honor.
   THE COURT: Sustained.
   Q. Did you believe that the case was worth investigating further after you spoke with [the victim]? A. Without a doubt.

3. Q. Did she indicate whether she—this flirting that she referred to, whether that meant any time in the past she wanted to have sex with the defendant? A. She did not intend to

have sex with this person ever. Her boyfriend was Demetri. She—
   DEFENSE COUNSEL: Your Honor, I object to him saying she did not intend to have sex with this person ever.
   WITNESS: Okay.
   DEFENSE COUNSEL: He can't possibly know that.
   COURT: Have to find me the question.
   (Court reporter read back the last question.)
   COURT: Sustained. The last portion of the answer is stricken.
   Q. When she told you about this, did it affect your determination of her credibility at all? A. Not at all.

4. We note defendant's objections were not followed by motions to strike. *See State v. Brotherton*, 384 N.W.2d 375, 379 (Iowa 1986) (when an objection is late and follows the answer, a motion to strike, coupled with an application to have the objection precede the answer or an excuse for tardiness, must be made).

probability that, but for his trial attorney's unprofessional errors, the resulting conviction and sentence would have been different. *Id.* A reasonable probability is one sufficient to undermine confidence in the outcome. *Id.*

The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process the trial cannot be relied on as having produced a just result. *Id.* Our review is de novo based upon an evaluation of the totality of the circumstances. *Davis v. State,* 520 N.W.2d 319, 321 (Iowa 1994).

Generally, claims of ineffective assistance of counsel are preserved for postconviction proceedings. *State v. Capper,* 539 N.W.2d 361, 367 (Iowa 1995). However, they may be resolved on direct appeal when the record adequately addresses the issues. *Id.*

*(a) Jury Instructions Nine and Fourteen.* Defendant argues his trial counsel was ineffective in failing to object to jury instructions nine [5] and fourteen.[6] Defendant claims these instructions shift or lessen the burden of persuasion. Defendant asserts "[e]ach instruction is a directive by the trial court for the jury to opt for a *conclusion* on evidence of intent pertaining solely to the defendant's acts." Defendant argues the instructions created "judicially authorized conclusions" and allowed the jury to place undue emphasis on what defendant did, rather than the entire evidence in the case, in determining his intent.

■ Instructions nine and fourteen were consistent with Iowa's Uniform Criminal Instructions 200.1 and 200.2 and state and federal law. *See Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *State v. Rinehart,* 283 N.W.2d 319 (Iowa 1979), *cert. denied,* 444 U.S. 1088, 100 S.Ct. 1049, 62 L.Ed.2d 775 (1980). The last line of both instructions clarifies a jury may, but is not required to, conclude a person intends the natural results of his acts. These instructions create a permissible inference and not a mandatory presumption. Trial counsel breached no duty in not objecting to jury instructions nine and fourteen.

*(b) Failure to Object to Officers' Testimony.* Defendant argues his trial counsel was ineffective in failing to object to the admission of the testimony previously referenced in division II of this opinion. The State theorizes trial counsel may have had strategic reasons for not objecting to the officers' testimony. We preserve this claim so a record may be developed as to why counsel did not object to the five pieces of testimony.

■ *(c) Submission of Alternative Theories of Sexual Abuse.* Defendant contends his trial counsel was ineffective in failing to object to the submission of alternative theories of sexual abuse. With respect to the offense of third-degree sexual abuse, the jury was instructed the State had to prove defendant performed a sex act:

a. By force or against the will of the [victim]; or

b. While [the victim] was suffering from a mental incapacity which prevented [her] from giving consent.

The first alternative is predicated upon section 709.4(1) [7] and the second alternative

---

5.　　　INSTRUCTION NO. 9

To commit a crime a person must intend to do an act which is against the law. While it is not necessary that a person knows the act is against the law, it is necessary that the person was aware he was doing the act and he did it voluntarily, not by mistake or accident. You may, but are not required to, conclude a person intends the natural results of his acts.

6.　　　INSTRUCTION NO. 14

"Specific intent" means not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind.

Because determining the defendant's specific intent requires you to decide what he was thinking when an act was done, it is seldom capable of direct proof. Therefore, you should consider the facts and circumstances surrounding the act to determine defendant's specific intent. You may, but are not required to, conclude a person intends the natural results of his acts.

7.　　　The act is done by force or against the will of the other participant, whether or not the other participant is the person's spouse or is cohabiting with the person.
Iowa Code § 709.4(1) (1993).

is based on section 709.4(2)(a).[8] Defendant cites section 709.4(1), which incorporates the definition of "sexual abuse" found in section 709.1(1).[9] He argues the victim's intoxicated state should have been submitted under section 709.1(1) as a "state of unconsciousness" rather than as an incapacity under section 709.4(2)(a). He contends the latter section applies only to mental defects and mental incapacity and would not encompass incapacity caused by intoxication. He argues there was no evidentiary basis to justify submission of the section 709.4(2)(a) alternative.

It appears the "incapacity" alternative of section 709.4(2)(a) is generally applied in cases of retarded or low-functioning victims. *State v. Chancy*, 391 N.W.2d 231 (Iowa 1986); *State v. Sullivan*, 298 N.W.2d 267 (Iowa 1980). However, nothing in the statute or case law indicates the term "incapacity"

could not extend to a person rendered unconscious from intoxication.

There was substantial evidence to warrant the submission of alternative theories of sexual abuse. There was substantial evidence to prove the victim was unconscious and without the capacity to consent when defendant first began to sexually abuse her, and when she awoke defendant acted by force and against her will in continuing the abuse. Counsel had no duty to object to the submission of alternate theories and was not ineffective.

**AFFIRMED.**

---

8. The other participant is suffering from a mental defect or incapacity which precludes giving consent.
Iowa Code § 709.4(2)(a) (1993).

9. Any sex act between persons is sexual abuse by either of the participants when the act is performed with the other participant in any of the following circumstances:
    1. The act is done by force or against the will of the other. If the consent or acquiescence of the other is procured by threats of violence toward any person or if the act is done while the other is under the influence of a drug inducing sleep or is otherwise in a state of unconsciousness, the act is done against the will of the other.
Iowa Code § 709.1(1) (1993).