# IN THE COURT OF APPEALS OF IOWA

No. 17-1416
Filed January 23, 2019

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**TYKEL DUPREE ROBINSON,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, Jeffrey L. Poulson, Judge.

The appellant appeals his conviction and sentence of robbery in the first degree. **REVERSED AND REMANDED.**

Priscilla E. Forsyth, Sioux City, and Zachary S. Hindman of Mayne, Hindman, & Daane (until withdrawal), Sioux City, for appellant.

Thomas J. Miller, Attorney General, and Thomas E. Bakke, Assistant Attorney General, for appellee.

Heard by Vogel, C.J., and Vaitheswaran and McDonald, JJ.

**VOGEL, Chief Judge.**

A jury found Tykel Robinson guilty of first-degree robbery. Robinson appeals his conviction and sentence. First, Robinson asserts he received ineffective assistance of counsel because his counsel failed to object to an incomplete jury instruction that did not provide for specific intent for an aider and abettor. Second, he argues the district court should have excluded evidence of a shooting where Robinson was not involved. Alternatively, he asserts his counsel was ineffective for failing to object to the use of evidence beyond what the ruling in limine allowed. We reverse and remand for a new trial, finding defense counsel breached an essential duty by failing to object to the faulty instruction and Robinson has established prejudice. In addition, we find failing to object to evidence that exceeded the ruling in limine was a breach of defense counsel's essential duty.

## I. Background Facts and Proceedings

On February 10, 2017, around 10:00 p.m., three teenagers, N.W., G.B., and K.R., walked from N.W.'s house to a nearby Kum & Go to purchase snacks. N.W. purchased Flamin' Hot Cheetos, two bottles of Dr. Pepper, and Sour Patch Watermelon candy. Then the three left the Kum & Go and headed back to N.W.'s house. On the walk back, the group was approached by two individuals. One individual walked away, but the other, later identified as Darius Wright, approached N.W.

Wright began to harass N.W. and asked him, "What do you got?" multiple times. Wright then grabbed N.W.'s sleeve and called for "Tykel." Someone, later identified as Robinson, started walking towards the group from down the block,

arriving—according to N.W.— "right away." Wright started to swing his fists at N.W., while Robinson stood near G.B. and K.R. G.B. testified N.W. and Wright were behind him and Robinson was "in front or like to the side of [him] almost." G.B. testified he "stepped to intervene and help [N.W.] out"; however, Robinson blocked his path, asked G.B. "if [he] was wanting to jump in," and then forced him to back away. K.R. affirmed that "no one else [she or G.B.] got involved" to help N.W. after Robinson blocked G.B. K.R. testified Robinson "appeared to be helping Mr. Wright, . . . because [G.B.] was going to help [N.W.], and then every time [G.B.] would step forward, [Robinson] would step forward."

N.W. testified Wright only "grazed" him. But after a few swings, Wright reached behind his body, pulled out a gun, aimed it at N.W.'s head, and said, "Give me what you got."[1] Scared, by the presence of the gun, N.W. pulled his phone out of his pocket and tossed it to Wright. N.W., G.B., and K.R. left the scene, leaving behind the bag of items purchased from Kum & Go. Robinson and Wright left the scene together.

Once the three teenagers returned to N.W.'s home, they told N.W.'s older brother, Alan Rave, about the incident. Rave grabbed a BB gun, N.W. grabbed two knives, and the four went to search for Wright and Robinson. While walking, N.W. testified he heard someone yell, "Hey, you" from a nearby home and believed it was Wright. N.W. and Rave approached the home and began to argue with Wright about N.W.'s phone. Wright eventually returned N.W.'s now-broken phone to N.W. The argument continued, and N.W. testified Wright knocked on the door

---

[1] G.B. testified Wright said, "Give me your phone," after aiming the gun at N.W.'s head.

and four or five individuals emerged and joined Wright. Rave and N.W. ran towards Kum & Go, while Wright and his friends chased them, yelling "fight me" and trying to take a "swing on" N.W. Eventually, Rave and N.W. entered the Kum & Go and asked the store clerk for help. The clerk testified Rave and N.W. ran into the store yelling, "We're being robbed," and the clerk left his station to help protect them as three pursuers entered the store. N.W. testified Robinson was one of the individuals that entered the store. The store clerk called the police after the pursuers left.

Shortly thereafter, the police arrived at the Kum & Go. While investigating the incident, a shooting victim, Angel Castillo-Martinez, approached the officers. Police quickly responded to the shooting scene and found shell casings at the home where Wright had previously confronted N.W. and Rave. Later, the police determined Wright had shot Castillo-Martinez.[2] A search warrant on the home was executed and a Kum & Go sack with a package of Sour Patch Watermelons inside was found in a bedroom. A bag of Flamin' Hot Cheetos and a bottle of Dr. Pepper were found in the kitchen.

Robinson was charged with robbery in the first degree on February 20, 2017. After trial, the jury returned a verdict finding Robinson guilty of first-degree robbery under Iowa Code sections 711.1, 711.2, and 703.1 (2017). Robinson was sentenced to an indeterminate term of incarceration not to exceed twenty-five years.[3] He appeals.

---

[2] It is undisputed Robinson was not involved in the shooting.
[3] The sentence imposed was to run consecutive with his sentence in FECR094019, in which Robinson pled guilty via an *Alford* plea to two counts of robbery in the second degree for offenses that occurred on January 25 and March 7, 2016. *See North Carolina*

## II. Standard of Review

We review ineffective-assistance-of-counsel claims de novo. *State v. Schlitter*, 881 N.W.2d 380, 388 (Iowa 2016). "Ordinarily, ineffective assistance of counsel claims are best resolved by postconviction proceedings to enable a complete record to be developed and afford trial counsel an opportunity to respond to the claim. Yet, in some instances, the appellate record can be adequate to address the claim on direct appeal." *State v. Truesdell*, 679 N.W.2d 611, 616 (Iowa 2004).

## III. Jury Instruction

Robinson asserts his counsel was ineffective at trial by failing to object to the "fatally flawed" instruction regarding specific intent, because he was charged—and the jury was instructed—that he committed the robbery either as the principal or as an aider and abettor. While the State admits Robinson's counsel likely breached an essential duty, it asserts Robinson cannot show prejudice.

To prevail on an ineffective-assistance-of-counsel claim, the appellant must show, by a preponderance of the evidence, counsel failed to perform some essential duty and such failure resulted in prejudice. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006); *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984). When "intent is an element of the crime charged, a person may be convicted on a theory of aiding and abetting if she [or he] participates with either the requisite intent, or with knowledge the principal possesses the required intent." *State v. Tangie*, 616 N.W.2d 564, 574 (Iowa 2000). Additionally, "[t]he State must

---

*v. Alford*, 400 U.S. 25, 37 (1970) (permitting a defendant to plead guilty to a crime without admitting participation in the underlying facts, which constitute the crime).

prove the accused knew of the crime at the time of or before its commission." *Id.*

First-degree robbery is a specific intent crime. *See* Iowa Code § 711.1 (stating an element of robbery is intent to commit a theft). Since Robinson was charged with first-degree robbery either as the principal or as an aider and abettor, the State was required to show he either had the requisite intent to commit a theft or had knowledge Wright possessed the required intent.[4] *See id.*; *Tangie*, 616 N.W.2d at 574.

The district court provided the jury with the following instruction on aiding and abetting:

> All persons involved in the commission of a crime, whether they directly commit the crime or knowingly "aid and abet" its commission, shall be treated in the same way.
> "Aid and abet" means to knowingly approve and agree to the commission of a crime, either by active participation in it or by knowingly advising or encouraging the act in some way before or when it is committed. Conduct following the crime may be considered only as it may tend to prove the defendant's earlier participation. Mere nearness to, or presence at, the scene of the crime, without more evidence, is not "aiding and abetting". Likewise, mere knowledge of the crime is not enough to prove "aiding and abetting".
> The guilt of a person who knowingly aids and abets the commission of a crime must be determined only on the facts which show the part he has in it, and does not depend upon the degree of another person's guilt.
> If you find the State has proved the defendant directly committed the crime, or knowingly "aided and abetted" [another] person in the commission of the crime, then the defendant is guilty of the crime charged.

---

[4] Iowa Code section 703.1 provides:
> All persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense or aid and abet its commission, shall be charged, tried and punished as principals. The guilt of a person who aids and abets the commission of a crime must be determined upon the facts which show the part the person had in it, and does not depend upon the degree of another person's guilt.

This instruction mirrors the Iowa Criminal Jury Instruction 200.8. However, the comment to Instruction 200.8 includes an additional paragraph for a specific intent crime:

> The crime charged requires a specific intent. Therefore, before you can find the defendant "aided and abetted" the commission of the crime, the State must prove the defendant either has such specific intent or "aided and abetted" with the knowledge the others who directly committed the crime had such specific intent. If the defendant did not have the specific intent, or knowledge the others had such specific intent, [he or she] is not guilty.

Iowa Criminal Jury Instruction 200.8 cmt. We find the district court's instruction was flawed because it did not properly instruct the jury on the specific intent of an aider or abettor. *See Tangie*, 616 N.W.2d at 574. Therefore, we find Robinson's counsel failed to perform an essential duty by not objecting to the incomplete jury instruction.

Notwithstanding this breach of duty, Robinson must show prejudice resulted from counsel's failure to object to the incomplete jury instruction. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Carey*, 709 N.W.2d 547, 559 (Iowa 2006) (quoting *Strickland*, 466 U.S. at 694). "Errors in jury instructions are presumed prejudicial unless 'the record affirmatively establishes there was no prejudice.'" *State v. Murray*, 796 N.W.2d 907, 908 (Iowa 2011) (quoting *State v. Hanes*, 790 N.W.2d 545, 551 (Iowa 2010)).

Robinson asserts, "[T]here is very little evidence to support a finding that [he] either had an intent to commit a theft, or knew that Wright had such intent at

the time when Robinson allegedly aided and abetted him." Robinson was not present when Wright first approached and taunted N.W. After Wright called for Robinson, N.W. and G.B. testified Robinson was "just up the block" and appeared quickly. G.B. testified he tried to help N.W. but Robinson blocked his path and asked if he wanted to "jump in." Both N.W. and G.B. testified to Robinson's continued presence when Wright drew a gun, aimed it at N.W.'s head, and threatened him.[5]

However, it appears from the record, the district court was concerned about Robinson's intent. In the ruling on Robinson's motion for new trial and motion in arrest of judgment, the district court made the following statement:

> [W]hile the Court does greatly sympathize and appreciate the argument made by Mr. Robinson that it was not his duty to stop Darius Wright from robbing or assaulting [N.W.]. The fact that Mr. Robinson was not present when the initial contact or discussion between Wright and [N.W.] is also something this Court finds troubling as well. However, those facts were argued, considered and weighed by the jury and while this Court finds it troubling that one can be guilty of crime in which they walked up to, arguably prevented from escalating, and walked away from, the fact still remains that Mr. Robinson knowingly entered the scene of and took part in a robbery. Mr. Robinson made the decision to join in on the incident, unfortunately involving himself, even in the most minor of roles, in the criminal act.

Since prejudice is presumed in this situation and even the district court had concerns with Robinson's intent, we find Robinson was prejudiced by his counsel's breach of duty.

---

[5] The record is unclear as to exactly what Wright said to N.W. when he aimed the gun at N.W.'s head. N.W. testified Wright said, "Give me what you got," but G.B. testified Wright said, "Give me your phone."

**IV. Admission of Evidence**

Robinson next asserts the district court abused its discretion by admitting evidence of the shooting following the robbery. The State argues error was not preserved. Robinson's counsel filed a motion in limine on July 7, 2017, and asked the district court to exclude evidence of the shooting following the robbery because, "[t]he probative value of this information is greatly outweighed by the prejudicial effect it will have on the defendant in this matter." The district court ruled on the motion and stated,

> Evidence relating to the shooting of Angel Castillo-Martinez by Darius Wright may be admitted for the sole purpose of proving the defendant aided and abetted Darius Wright who was armed with a dangerous weapon. The parties are ordered to prepare a limiting instruction to be given to the jury with the final jury instructions. The aforesaid evidence may not be used for any other purpose.

To convict Robinson of first-degree robbery under the aiding and abetting theory, the State had to prove Wright had a dangerous weapon at the time of the alleged robbery. *See* Iowa Code § 711.2. There was a dispute whether Wright had a B.B. gun or some form of a handgun. G.B described the gun as having, "a black grip with a silver, chrome slideback; an optical; and a silencer." The State offered evidence of the shooting to show the weapon Wright held to N.W.'s head was a dangerous weapon because it was later used to shoot another individual.[6] Although the gun was never recovered, .22 caliber shell casings found near the

---

[6] Jury instruction number 24 provided:

> Evidence has been submitted that a BB gun may have been used during the events testified to during this trial. A BB gun is not automatically a dangerous weapon under Iowa law. It can be a dangerous weapon if sufficient expert testimony is presented that the BB gun was designed primarily for use in inflicting death or serious injury.

shooting and Castillo-Martinez's wounds confirmed Wright used something other than a B.B. gun during the shooting. Because the State needed to prove the dangerous weapon element to support the robbery conviction, the district court's ruling on Robinson's motion in limine was proper. Moreover, the court gave the jury a cautionary instruction so as to limit the jury's use of the testimony regarding the shooting.[7]

Alternatively, Robinson argues his counsel provided ineffective assistance by failing to raise further objection at trial when he claimed the evidence from the shooting went beyond what the ruling on the motion in limine allowed. In order to succeed on this ineffective-assistance-of-counsel claim, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *State v. Wissing*, 528 N.W.2d 561, 564 (Iowa 1995) (quoting *Strickland*, 466 U.S. at 689 (internal citation omitted)).

During Officer Bryan Noll's trial testimony, the prosecutor introduced a photograph of Castillo-Martinez's face while he was hooked up to oxygen after the shooting. Defense counsel expressly did not object to the admission of this photograph. Other officers testified in some detail about the shooting, including

---

[7] Jury instruction number 32 provided:
> Evidence has been received concerning a shooting at [the location] in which officers with the Sioux City Police Department testified that they identified Darius Wright as the shooter. The defendant was not charged for this incident and was determined by the Sioux City Police Department not to be present during this incident. The Defendant is not on trial for this incident.
> . . . [Y]ou may consider this evidence only for the purpose of determining whether Darius Wright was armed with a dangerous weapon herein and thus whether the State has proved beyond a reasonable doubt that the defendant aided and abetted Darius Wright who was armed with a dangerous weapon . . . .

where on Castillo-Martinez's body the wounds were inflicted and the officers' investigative efforts upon learning of the shooting, such as cordoning off the street, securing the perimeter of the house, and coordinating with the SWAT team. None of this evidence assisted the jury in determining whether Wright had a dangerous weapon at the time of robbery. Despite being given an opportunity to object, defense counsel breached an essential duty by failing to object to the evidence that clearly went beyond the confines of the limine ruling. We reverse and remand for a new trial.

## V. Conclusion

We conclude Robinson's counsel provided ineffective assistance of counsel by failing to object to the faulty instruction and such failure resulted in prejudice. Additionally, we find the district court's ruling on the motion in limine was proper, but we find the counsel breached an essential duty by failing to raise further objection to the admission of evidence beyond the confines of the ruling.

**REVERSED AND REMANDED.**