STATE of Iowa, Appellee,

v.

Hubert Gene EVANS, Appellant.

No. 02–0668.

Supreme Court of Iowa.

Nov. 13, 2003.

Raymond M. Tinnian, Bjorklund Law Firm, LLC, Coralville, for appellant.

Thomas J. Miller, Attorney General, Sheryl A. Soich, Assistant Attorney General, William E. Davis, County Attorney, and Robert Bradfield, Assistant County Attorney, for appellee.

STREIT, Justice.

A man claiming to have a foot fetish appeals his convictions for stalking and two counts of harassment. He alleges there is insufficient evidence to support the convictions, his first amendment rights were violated, extreme prejudice demanded a change of venue, and his sentence was unreasonable. After reviewing the record, we reject these arguments and affirm the district court on all counts.

## I. Background and Facts

The evidence, as viewed most favorably to the state, reveals the following facts. Hubert Gene Evans has a foot fetish. He is also, it appears, a published photographer.[1] While a nursing student at Scott County Community College in the late 1990s, Evans asked Rebecca Arnold if she would let him photograph her feet. Evans told Arnold he took pictures for a magazine in New York and had helped other women become "big models." Arnold declined Evans' offer.

In 1998, Evans called Arnold at her house, and left a message with Arnold's father. Evans called a second time. Arnold's father told him not to call her again.

In 2000, Arnold saw Evans in a drug store parking lot. As Arnold made her way from her car to the store, Evans asked her if he could take pictures of her feet. He told her he would like her "legs bare and apart." A nervous and repulsed Arnold again declined Evans' offer, and went into the store.

On August 7, 2001, Evans called Arnold's house and left his phone number and a message with Arnold's mother. In the message, Evans said he had a surprise for Arnold. Arnold did not return Evans' phone call. Worried Evans would discover where she lived, Arnold called the police the next day. At a later date, this incident resulted in a charge of harassment, of which a jury found Evans not guilty.

On August 31, 2001, Evans went to Arnold's house. Evans asked Arnold if she would be willing to play a dominant female role in a new pictorial he was producing about Dred Scott. Arnold told Evans she thought it was weird. Evans replied, "Well, I do weird things because I'm a weird guy." Evans offered Arnold $100 simply to read his script. Arnold repeatedly said she wasn't interested. After Evans left, Arnold called the police. This encounter, too, would later result in another harassment charge against Evans. On this count, a jury found him guilty.

After this incident, Arnold saw Evans' phone number on her caller identification screen four or five times.

On September 21, 2001, Arnold went to a car wash. While standing at a change

---

1. Evans testified his photographs were last printed in *Leg Sex* in 2000.

machine, Evans approached her. Evans told her he noticed she had gotten a new car. As she fled the car wash, Arnold, attempting to mislead Evans, told him the car wasn't hers. Arnold left without getting her change or washing her car. That evening, Evans called Arnold at home. Arnold "told him [she] wasn't interested" and immediately hung up.

On September 25, 2001, Evans and a friend went to Arnold's house. A frightened Arnold asked her mother to answer the door and to tell Evans she wasn't home. Evans told Arnold's mother to let Arnold know he had dropped by and wanted to take photographs of her. As Evans left, Arnold's mother noticed Evans was wearing "red strap high heels" and had painted his toenails red. Eventually, the State charged Evans with a third count of harassment for this second incident at Arnold's home, and a jury again found him guilty.

On October 12, 2001, Arnold saw a woman standing outside her front door. When Arnold opened the door, Evans, who apparently had been bent over in front of the woman, "pop[ped] up" and asked Arnold for a drink of water. Arnold cussed at Evans, told him to "get off my property," and slammed the door shut. Arnold called the police. She then went to her window in order to try to catch Evans' license plate. Evans smiled and waved at Arnold. This incident did not result in a harassment charge, but was used to prove Evans stalked Arnold.

Evans was arrested for all these incidents and tried by jury for first-offense stalking (Count I) and three counts of first-degree harassment (Counts II–IV). See Iowa Code §§ 708.11, 708.7 (2001). Whereas the stalking charge drew upon the entire course of the defendant's conduct which culminated with Evans' appearance at Arnold's house on October 12, the three harassment charges were focused upon three discrete incidents, as indicated above: 1) on August 7, 2001, when Evans left a message for Arnold indicating he had a "surprise" for her (Count II); 2) on August 31, 2001, when Evans asked Arnold to read his "script" (Count III); and 3) on September 25, 2001, when Evans went to Arnold's house in high heels and with painted toenails (Count IV). The harassment charges were elevated to the first-degree because Evans had previously been convicted of harassment four times. See id. § 708.7(2) (enhancing harassment charge to the first-degree where defendant has three or more convictions for harassment within the previous ten years).

A jury convicted Evans of stalking and two counts of first-degree harassment. The jury acquitted Evans of Count II. The judge sentenced Evans to a term not to exceed two years of prison for each conviction, to be served consecutively. He also ordered Evans to pay $3000 in fines.

On appeal, Evans claims there is insufficient evidence to support the convictions, his first amendment rights were violated, extreme prejudice demanded a change of venue, and his sentence was unreasonable. We now consider each of these claims, in turn.

## II. The Merits

### A. Insufficiency of Evidence & Free Speech Claim

Evans claims the district court erred in denying his motion for a judgment of acquittal, because there was insufficient evidence to support his convictions for stalking and harassment. In tandem with this argument, Evans contends he could not have committed harassment because his actions were protected by his right to free speech. See U.S. Const. amend. I. We recently considered and rejected a similar

claim in another case involving Evans. *See State v. Evans*, 672 N.W.2d 328, 331 (Iowa 2003).

■ As a threshold matter, in this case we refuse to consider Evans' constitutional claim, because Evans did not preserve error. Reviewing the record, we find Evans did not raise this issue in the district court. "Issues not raised before the district court, including constitutional issues, cannot be raised for the first time on appeal." *State v. McCright*, 569 N.W.2d 605, 607 (Iowa 1997). We now consider Evans' claim there was insufficient evidence presented at trial to support his convictions for harassment and stalking.

■ We review insufficiency claims for errors at law. *State v. Sanborn*, 564 N.W.2d 813, 816 (Iowa 1997) (quoting *State v. Bayles*, 551 N.W.2d 600, 608 (Iowa 1996)). We view the evidence in the light most favorable to the State, and will not disturb a jury verdict unless we find the evidence supporting the conviction was not substantial. *Id.* "Evidence is substantial if it could convince a rational fact finder that the defendant is guilty beyond a reasonable doubt." *Id.*

### 1. Harassment

Evans was convicted of two counts of first-degree harassment in violation of Iowa Code sections 708.7(2) and 708.7(1)(*b*). In order to address Evans' sufficiency challenge, we review Iowa Code section 708.7(1)(*b*), which states, in relevant part:

> A person commits harassment when the person, purposefully and without legitimate purpose, has personal contact with another person, with the intent to threaten, intimidate, or alarm that other person....

Iowa Code § 708.7(1)(*b*). Evans claims that, as a published photographer, his sole

purpose in contacting Arnold was to take her picture. Moreover, the defendant maintains he never threatened Arnold; he points out we have yet to sustain a conviction for harassment in the absence of a showing of a threat on the part of the defendant, and therefore ought not to do so here.

■ We are satisfied a reasonable jury could find the defendant guilty on the charges of harassment beyond a reasonable doubt. Threatening the victim is not a necessary element of our harassment statute. To conclude otherwise would ignore the disjunctive language of section 708.7(1)(*b*), which forbids a person from "personally and without legitimate purpose ... [having] personal contact with another person, with the intent to threaten, intimidate, *or* alarm that other person." Iowa Code § 708.7(1)(*b*) (emphasis added); *see State v. Anderson*, 636 N.W.2d 26, 37 (Iowa 2001) ("We avoid interpreting a statute to render any part of it superfluous.").

■ There is substantial evidence in the record Evans intended to alarm, if not intimidate, Arnold. Our court has not previously had occasion to define "alarm" for the purposes of Iowa Code section 708.7(1)(*b*). "In the absence of a legislative definition of a term or a particular meaning in the law, we give words their ordinary meaning." *State v. White*, 563 N.W.2d 615, 617 (Iowa 1997). To ascertain the ordinary meaning of a word, we may consult the dictionary. *Id.* The dictionary defines "alarm" as to "cause (someone) to feel frightened, disturbed, or in danger...." *The New Oxford American Dictionary* 36 (2001).

■ Evans correctly points out harassment is a specific intent crime. *State v. Button*, 622 N.W.2d 480, 483 (Iowa 2001). Intent is "seldom capable of direct proof," however, and "a trier of fact may

infer intent from the normal consequences of one's actions." *Evans*, 672 N.W.2d at 331 (citing *State v. Chang*, 587 N.W.2d 459, 462 (Iowa 1998); *State v. Farnum*, 554 N.W.2d 716, 720 (Iowa Ct.App.1996)).

 Given the prior history between the two parties, we believe the evidence was sufficient to permit a reasonable jury to find the defendant acted with the intent to alarm or intimidate Arnold in the two incidents for which he was convicted of harassment. By August 31, when Evans showed up at Arnold's home uninvited and asked Arnold if she would be willing to play a dominant female role in a new pictorial he was producing about Dred Scott, Arnold had repeatedly rebuffed Evans' offers. By September 25, Evans had made several more unsuccessful attempts to persuade Arnold to pose for him, including the incident at the car wash where Arnold hurriedly ran away from Evans without washing her car or picking up her change. It should not have been unexpected on Evans' part that his conduct would alarm Arnold.

In the context of the history between these two parties, we think a reasonable jury could find, at the very least, Evans intended to alarm Arnold when he showed up at her front door asking to take her picture on August 31. This behavior would easily cause Arnold to feel frightened, disturbed, or in danger; such is the natural consequence of Evans' acts, from which the requisite intent for harassment may be inferred. *See Evans*, 672 N.W.2d at 331 (citing *Chang*, 587 N.W.2d at 462; *Farnum*, 554 N.W.2d at 720). This inference becomes even stronger by the September 25 incident, in light of the additional unsuccessful attempts which occurred in the interim and the fact Evans appeared wearing red, strappy high heels with matching toenails. There is ample evidence here of a ratcheting up of bizarre and alarming behavior. For both incidents, a rational jury could conclude Evans intended to alarm Arnold.

### 2. Stalking

Evans also claims there was insufficient evidence presented at trial to sustain his conviction for stalking Arnold. Evans contends Arnold never explicitly told him to leave her alone before October 12; rather, he alleges, Arnold only told him she wasn't interested, which, according to Evans, means something entirely different. Moreover, Evans points out there is no evidence the police told Evans to leave Arnold alone nor any allegation Evans violated a protective order. And lastly, absent any threats on his part, Evans maintains there is no evidence a reasonable person would fear bodily injury or death because of his behavior. Again, we must reject Evans' claims.

Iowa's stalking statute states:

A person commits stalking when all of the following occur:

a. The person purposefully engages in a course of conduct directed at a specific person that would cause a reasonable person to fear bodily injury to, or the death of, that specific person or a member of the specific person's immediate family.

b. The person has knowledge or should have knowledge that the specific person will be placed in reasonable fear of bodily injury to, or the death of, that specific person or a member of that specific person's immediate family by the course of conduct.

c. The person's course of conduct induces fear in the specific person of bodily injury to, or the death of, the specific person or a member of the specific person's immediate family.

Iowa Code § 708.11(2). Proof of all three elements, beyond a reasonable doubt, is

necessary to sustain a conviction under Iowa's stalking statute. *Id.; see State v. Limbrecht*, 600 N.W.2d 316, 318 (Iowa 1999).

We think a reasonable jury could find the prosecution met its burden on all three elements of Iowa Code section 708.11(2) in the present case. Although the defendant never threatened Arnold, making a threat is not an element of our stalking statute. *See Limbrecht*, 600 N.W.2d at 319 ("Instead of targeting a 'credible threat,' the statute criminalizes a 'course of conduct' that may or may not include threats."). Nor is it necessary the defendant receive official notice from the police his behavior is causing the victim fear. Given the persistent, repeated, and sexual nature of Evans' questioning, including his unexpected arrivals at Arnold's home, we think a rational jury could find Evans guilty of stalking Arnold.

We think the record clearly shows Evans purposefully engaged in a course of conduct directed at Arnold which would cause a reasonable person to fear bodily injury, and Evans knew Arnold would be placed in such fear. The record discloses a course of conduct in which Arnold repeatedly said she was not interested in Evans' disturbing offers. On two occasions, she fled from Evans. Importantly, Evans' behavior escalated over time, culminating in two uninvited visits to Arnold's home, even though Arnold did not tell Evans where she lived. On the first visit, Evans wore red strappy heels with painted toenails to match; on the second, he hid in front of his companion and jumped out when Arnold answered the door. Given Evans' repeated and ever-escalating attempts to photograph Arnold, her steadfast refusals, and the bizarre sexual nature of Evans' proposals, a rational jury could find a reasonable person would fear injury. Moreover, there is sufficient evidence Ev-

ans knew Arnold would have such fears. Nor is there any question Arnold, in fact, feared Evans would injure her. Arnold testified at trial she now takes a different route to work, parks her car in a secure lot, and is afraid to answer the door or even the telephone.

**B. Venue**

Evans also claims the district court erred in failing to move the trial to another county. Our review of a denial of a motion for a change of venue is de novo. *State v. Siemer*, 454 N.W.2d 857, 860 (Iowa 1990). We will reverse only upon a showing the district court abused its discretion in failing to move the trial. *Id.*

Our rules of criminal procedure allow a court to order a change of venue

> [i]f the court is satisfied from a motion for a change of venue and the evidence introduced in support of the motion that such degree of prejudice exists in the county in which the trial is to be held that there is a substantial likelihood a fair and impartial trial cannot be preserved with a jury selected from that county....

Iowa R.Crim. P. 2.11(10). Before we will reverse an order denying a motion to change venue, the defendant must show, in the absence of proof of actual prejudice on the part of the jury, that the "publicity attending the trial ... is so pervasive that prejudice must be presumed." *Siemer*, 454 N.W.2d at 860–61 (citing *State v. Spargo*, 364 N.W.2d 203, 207 (1985)). There is no evidence of actual prejudice in the record. In order to determine whether publicity is presumptively prejudicial, we consider several factors: "the nature, tone, and accuracy of the articles; their timing in relation to the trial; and the impact of the publicity on the jurors as revealed through voir dire." *Id.* (citing *State v. Walters*, 426 N.W.2d 136, 138 (Iowa 1988)).

Evans contends the salacious details of the case made it "absurd to think that any segment of the community would not eventually hear something prejudicial to [Evans] . . ." The record does not support Evans' belief that his case was the epicenter of public attention. Although Evans alludes to other inflammatory media coverage, in the record we have only one newspaper article presented for our review. As in *Siemer*, the nature and tone of the record was "predominately factual and no more sensational than the crimes alleged." *Siemer*, 454 N.W.2d at 861. Importantly, in the present case we have no record of voir dire. From the facts presented in the record, we cannot presume prejudice; we have no way of knowing the impact of publicity on the jurors. After reviewing this record, we cannot say the district court abused its discretion in failing to move Evans' trial.

## C. Sentencing

The district court sentenced Evans to serve, consecutively, the maximum two-year indeterminate sentence for each of his three convictions. The sentencing judge also mandated Evans' sentences run consecutively with his sentences for similar behavior in two other cases. *See, e.g., Evans*, 672 N.W.2d at 331–32. Evans claims the sentences in the present case are clearly unreasonable, because, in part, his behavior could have been much worse, and yet no harsher penalty could have been imposed.

The Iowa Rules of Criminal Procedure require the district court to "state on the record its reason for selecting the particular sentence [it imposes]." Iowa R.Crim. P. 2.23(3)(*d*). Where a consecutive sentence is imposed, the sentencing judge must give a reason for doing so. *Evans*, 672 N.W.2d at 331–32 (citing *State v. Jacobs*, 607 N.W.2d 679, 690 (Iowa

2000)). "Although the reasons do not need to be detailed, they must be sufficient to allow appellate review of the discretionary action." *Id.* Appellate review of a sentencing decision is for an abuse of discretion. *Id.* (citing *State v. Laffey*, 600 N.W.2d 57, 62 (Iowa 1999)).

The sentencing judge gave several reasons for his decision. The judge recognized Evans' recidivism, his lack of remorse, and the effect of his behavior upon others. The judge determined Evans "just do[esn't] seem to get it, that this is about scaring people." We agree. Evans' behavior is an ongoing problem. The record shows he has a lengthy history of contact with law enforcement, including four convictions for harassment. The judge also took into account the effects of Evans' actions upon Arnold, noting Evans "made it a point to figure out where it was she lived." We do not think the district court abused its discretion in rendering its sentence, and reject all of Evans' contentions to the contrary.

## III. Conclusion

We affirm the district court on all counts. Because the defendant failed to preserve error on his constitutional claim, we do not consider whether his convictions of harassment violated his right to free speech. We find there is sufficient evidence to support Evans' convictions for harassment and stalking. The record does not show the district court erred in denying Evans' motion to change venue. Lastly, we conclude the sentence imposed by the district court was reasonable.

**AFFIRMED.**

All justices concur except WIGGINS, J., who takes no part.