## IN THE COURT OF APPEALS OF IOWA

No. 14-0501
Filed November 26, 2014

**DEBBIE L. DIERENFELD,**
　　　　Petitioner-Appellee,

**vs.**

**SCOTT M. STEFFES,**
　　　　Respondent-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Robert A. Hutchison, Judge.

Scott Steffes challenges the sufficiency of the evidence supporting a domestic abuse protective order. **AFFIRMED.**

Eric G. Borseth of Borseth Law Office, Altoona, for appellant.

F. John Spellman of Spellman Law Office, Des Moines, for appellee.

Considered by Danilson, C.J., and Doyle and Tabor, JJ.

**DOYLE, J.**

Scott Steffes appeals from the district court's final protective order entered in Iowa Code chapter 236 (2013) proceedings, contending the record is insufficient to support the district court's determination he committed domestic abuse assault against his estranged girlfriend, Debbie Dierenfeld. Because a preponderance of the record evidence establishes Scott committed domestic abuse assault against Debbie, we affirm.

## I. *Background Facts & Proceedings*

Debbie and Scott lived together from the early months of 2012 until July 2013. They have one child together, born in April 2012. Debbie filed a petition for relief from domestic abuse in February 2014 following a string of incidents involving Scott.

Debbie testified Scott "used to terrorize me at night and not let me sleep, tell me he would kill me and no one would find out" and that Scott was "violent and throwing things around." Debbie stated during one altercation in April 2013, she tried to call 911, but Scott "smashed" her phone. When Debbie picked up their child and went to the child's bedroom, Scott "came in and slammed the crib against the wall, leaving a hole, and then starting throwing things around in her room and told me he would kill me if I left." Debbie was fearful of Scott.

Debbie testified that after she and the child moved out, Scott "would text me incessantly with threats" "[s]ometimes 20, 30 times a day," "would call 20, 30 times a day," and he "showed up at my work." Exhibits 1 and 2 were entered into evidence. In Exhibit 1, Scott sent a text message to Debbie, "You lie all the time . . . I can't wait to see you. . . . You need to return my medicine and wallet

tonight. I have a lot of slundge [sic] hammers." Debbie testified Scott's message was threatening. In Exhibit 2, Scott sent a text message Debbie about property and a potential settlement, concluding, "And well for everyone, well what going around comes around. . . . Arson." Debbie testified she took the word "arson" in Scott's text message to mean "[t]hat he would burn the house—houses down. He had told me that in person before."

In January 2014, Debbie and the child met Scott and his niece at a Chuck E. Cheese restaurant. Debbie heard Scott saying derogatory things to their child, and told him not to talk to the child like that. Scott then "just went nuts in the middle of Chuck E. Cheese's and said, Eff you, and, I should just effing kill you and get it over with, and, This is what I have to deal with all the time." Debbie picked up the child and left. Debbie testified he was loud and she was scared.

Debbie testified on February 12, 2014, someone attempted to break into her home. Debbie stated a window was pushed in when she opened the front door and there was trash thrown all over the driveway. She called the police. Debbie testified she is afraid of Scott and in fear of her safety. She stated she does not know of anyone else that would have attempted to break into her house and she does not have any enemies.

Scott testified he had never threatened Debbie, had not attempted to break into her home, and did not know or did not remember sending the text messages sent from his phone number. Scott further stated Debbie had gotten upset at him at Chuck E. Cheese, but he denied threatening her.

Ultimately, the district court found this evidence sufficient to justify entry of a final protective order. Scott appeals.

## II. Standard of Review

This civil domestic abuse case was heard in equity, and our review is de novo. *See Wilker v. Wilker*, 630 N.W.2d 590, 594 (Iowa 2001). "Respectful consideration is given to the trial court's factual findings and credibility determinations, but not to the extent where those holdings are binding upon us." *Id.*

## III. Analysis

Scott contends the record is insufficient to support the district court's determination he committed domestic abuse assault against Debbie. More specifically, Scott claims the evidence fails to show he had the specific intent to commit the underlying assault required for an adjudication of domestic abuse. He further alleges Debbie tries to limit his contact with the parties' child, and Debbie's motivation in seeking relief under chapter 236 should be considered in assessing her credibility.

In a chapter 236 domestic abuse proceeding, the party seeking protection must prove the allegation of domestic abuse by a preponderance of the evidence. *See* Iowa Code § 236.4(1). In order to show there has been "domestic abuse," the party must show there has been an assault, as defined in section 708.1. *See id.* § 236.2(2). Assault under section 708.1 includes:

> a. Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act.
> b. Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.

Iowa Code § 708.1(2).

Assault under section 708.1 includes an element of specific intent. *State v. Fountain*, 786 N.W.2d 260, 266 (Iowa 2010). The court may infer intent from the normal consequences of a party's actions. *State v. Evans*, 671 N.W.2d 720, 724-25 (Iowa 2003). "Intent is a state of mind; it may be established by circumstantial evidence and by inferences drawn from that evidence." *State v. Nance*, 533 N.W.2d 557, 562 (Iowa 1995).

On our de novo review of all of the evidence presented in this case, we determine a preponderance of the evidence shows Scott had the specific intent required to commit an assault under section 708.1. We may infer intent from Scott's actions. *See Evans*, 671 N.W.2d at 724-25. At a minimum, with regard to the incident in April 2013, Scott's actions in throwing things, slamming the crib into the wall, and smashing Debbie's phone when she tried to call for help, while threatening to kill Debbie if she left, was an act done by Scott without justification, intended to place Debbie in fear of immediate physical contact which would be insulting or offensive to Debbie, and was coupled with the apparent ability to execute the act. Although Scott denied that this incident occurred or that he had threatened Debbie, we give weight to the district court's findings as to credibility because the trier of fact has a better opportunity to evaluate the credibility of witnesses. We conclude the record evidence supports a finding that Scott's actions, as testified to by Debbie, in fact occurred. We affirm the issuance of the final domestic abuse protective order.

**AFFIRMED.**