# IN THE COURT OF APPEALS OF IOWA

No. 19-1661
Filed April 14, 2021

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**JENNIFER KATHERINE BEAN,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Floyd County, Christopher Foy, Judge.

Jennifer Bean appeals her conviction for attempt to commit murder. **AFFIRMED.**

Andrew C. Abbott of Abbott Law Office, P.C., Waterloo, for appellant.

Thomas J. Miller, Attorney General, and Bridget A. Chambers, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., Greer, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**GAMBLE, Senior Judge.**

Jennifer Bean appeals her conviction for the attempted murder of her mother, Roberta Glaser. She argues (1) the district court should have granted her motion for a change of venue, (2) the court abused its discretion in denying her request to admit roughly 20,000 text messages into evidence, and (3) there was insufficient evidence to support her conviction. We affirm.

## I. Background Facts

In 2018, Bean lived with Glaser and Glaser's young adopted daughter, B.G. Bean moved in with Glaser following Glaser's metastatic cancer diagnosis to help care for Glaser. Bean disagreed with Glaser's preference for natural remedies and nontraditional treatments. Eventually, Glaser sought care from an oncologist. Glaser had difficulty dealing with the side effects of her medication so her doctor adjusted the dosage. Her condition was deteriorating. Bean believed Glaser did not consistently take her medication as prescribed and did not grasp the seriousness of her condition.

While living with Glaser, Bean also helped care for B.G. Bean wanted to become B.G.'s guardian should Glaser pass away. However, in a codicil to her will, Glaser expressed her desire for Michael and Stacy Staudt be appointed as B.G.'s guardians upon her death. She also explicitly stated she did not want Bean to be appointed as B.G.'s guardian.

Animosity began to grow between Bean and Glaser. On October 8, Bean texted three people, "i hope that bitch gets hit by a semi!!! ya know she didnt even say hi or notice im [sic] in the house??!!! the rage is building in a very unhealthy

way!!" On October 13, Bean got a bottle of insulin and three syringes from a diabetic friend. Bean is not diabetic.

Then on November 6, Bean offered to give Glaser a massage. After some back and forth, Glaser agreed to let Bean give her a massage. But Bean pulled Glaser's sweatpants down and injected her in the buttocks with insulin. The two women struggled with each other. Glaser managed to get the syringe away from Bean and broke the needle off of it to keep Bean from injecting her again. During the scuffle, Bean took Glaser's phone, tablet, and chargers. Glaser remembered she had an old phone in a drawer in her bedroom but could not get away from Bean long enough to use it. Bean injected Glaser again in the arm from another syringe. Glaser used her old phone to call 911. She gave the operator her address and said that her daughter was trying to kill her.

Glaser got out of the house and started to run away. Bean hid the vial of insulin and a charged syringe in a candy container, in a laundry basket, in a closet and gave chase. Then emergency services showed up. Glaser frantically tried to persuade the police to let her call Stacy Staudt to pick up B.G. from school to keep her away from Bean. The police found Glaser's phone under Bean's mattress. After making arrangements for B.G., Glaser agreed to go to the hospital. At the hospital, Glaser reported that Bean injected her in the buttocks and in her arm. Glaser had a red spot in both locations. Bloodwork confirmed Glaser's glucose and potassium levels were low, creating a potentially life threatening condition.[1]

---

[1] Glaser's glucose was forty-five, and a normal glucose level is between seventy and one-hundred ten. Her potassium level was 2.5, and a normal potassium level is between 3.5 and 5.1.

The State charged Bean with attempt to commit murder. Bean moved for a change in venue, citing pretrial publicity and her status as a well-known person in the area. The district court denied the motion, and the matter proceeded to a jury trial. And the jury found Bean guilty as charged. She now appeals.

Additional facts will be discussed as necessary.

## II. Discussion

### A. Change of Venue

On appeal, Bean argues the district court should have granted her motion for a change of venue. She again points to pretrial publicity and her extensive family in the area and argues she could not receive a fair and impartial trial as guaranteed by the state and federal constitutions absent a change in venue.[2] "[The] right to a fair trial by impartial jurors has its underpinnings in our state and federal constitutions." *State v. Newell*, 710 N.W.2d 6, 33 (Iowa 2006) (alteration in original) (quoting *State v. Siemer*, 454 N.W.2d 857, 860 (Iowa 1990)). "Therefore, our review is de novo." *Id.* But "[r]eversal is warranted only where the trial court's decision demonstrates an abuse of discretion." *Id.* (quoting *Seimer*, 454 N.W.2d at 860).

---

[2] Bean also notes members of the jury venire were related to witnesses called at trial. But she only makes a passing statement considering this issue and did not develop it, so we do not consider it. *See State v. Vaughan*, 859 N.W.2d 492, 503 (Iowa 2015) (holding failure to make an argument in support of an issue constitutes waiver); *State v. Tyler*, 867 N.W.2d 136, 166 n.14 (Iowa 2015) (noting a "passing reference" in a brief constitutes waiver); *cf.* Iowa R. App. 6.903(2)(g)(3) (requiring an appellant's brief contain "[a]n argument section containing the appellant's contentions and the reasons for them with citations to the authorities relied on . . . . Failure to cite authority in support of an issue may be deemed waiver of that issue").

Iowa Rule of Criminal Procedure 2.11(10)(b) provides:

> If the court is satisfied from a motion for a change of venue and the evidence introduced in support of the motion that such degree of prejudice exists in the county in which the trial is to be held that there is a substantial likelihood a fair and impartial trial cannot be preserved with a jury selected from that county, the court either shall order that the action be transferred to another county in which the offensive condition does not exist, as provided in rule 2.11(10)(c), or shall order that the trial jury be impaneled in and transferred from a county in which the offensive condition does not exist, as provided in rule 2.11(10)(d).

However, "[b]efore we will reverse an order denying a motion to change venue, the defendant must show, in the absence of proof of actual prejudice on the part of the jury, that the 'publicity attending the trial . . . is so pervasive that prejudice must be presumed.'" *State v. Evans*, 671 N.W.2d 720, 726 (Iowa 2003) (alteration in original) (*Siemer*, 454 N.W.2d at 860–61).

So we first consider whether Bean has demonstrated actual prejudice. Bean does not argue she was actually prejudiced. Instead she argues,

> The preconceived notions of Ms. Bean and Ms. Glaser of the family members, the relatives of those family members, the acquaintances of the family members, the work associates of the family members and the negative press being provided to all of those people that either had direct or indirect contact with Bean, members of her family, or witnesses called at trial, created *potential prejudice* that denied Bean the right to a fair trial under the Iowa and United States Constitution[s].

(Emphasis added.) But as the State points out, none of the members of the jury venire who stated they knew of this family or of the case served on Bean's jury, with the exception of one juror who was dismissed partway through the trial for an unrelated reason. So Bean cannot demonstrate actual prejudice.

We move on to review the pretrial publicity to determine whether it was "so pervasive that prejudice must be presumed." *Id.* "In order to determine whether

publicity is presumptively prejudicial, we consider several factors: 'the nature, tone, and accuracy of the articles; their timing in relation to the trial; and the impact of the publicity on the jurors as revealed through voir dire.'" *Id.* (quoting *Siemer*, 454 N.W.2d at 860). Taking these factors into account, our de novo review of the submitted exhibits of the pretrial publicity squares with the district court's analysis.

As the district court stated, "[a]ll of the news reports were factual in tone and straightforward in presenting information about [Bean] and her case." And "[n]one of the news accounts go into any great amount of detail regarding the facts of this case." Moreover, all but two pieces of pretrial publicity came out in 2018, but Bean's trial did not occur until August 2019. The two articles published in 2019, one in April and another in July, were not particularly detailed. And the impact of the publicity on the jurors was minimal as demonstrated through voir dire. So we agree with the district court that the pretrial publicity was not presumptively prejudicial.[3] We conclude the district court did not abuse its discretion in denying the motion for change of venue.

**B. Exclusion of Evidence in Violation of Iowa Rule of Evidence 5.106**

Next, Bean argues the district court violated Iowa Rule of Evidence 5.106 when it denied her request to admit approximately 20,000 text messages after admitting several text messages submitted by the State. Bean contends without

---

[3] We note Bean laments that the district court did not "address the number of family members that [Bean] had in the community and the reputation and connection that Bean had to the Charles City and Floyd County area." But Bean did not establish any actual prejudice from any familial connection or notoriety. And Bean does not cite any authority to suggest a defendant's general notoriety, or a defendant's family's general notoriety, in the community should be considered when determining whether presumptive prejudice exists.

the additional 20,000 text messages, the admitted text messages were considered out of context. But before we may address the merits of Bean's claim, we must address error preservation.

As the State points out, Bean did not make an offer of proof with respect to the text messages she asserts should have been admitted. Iowa Rule of Evidence 5.103 provides: "A party may claim error in a ruling to . . . exclude evidence only if the error affects a substantial right of the party and . . . a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context." We require an offer of proof because it "give[s] the trial court a more adequate basis for its evidentiary ruling" and it provides appellate courts "a meaningful record for appellate review." *Brooks v. Holtz*, 661 N.W.2d 526, 529 (Iowa 2003) (quoting *State v. Richardson*, 223 N.W.2d 207, 212–13 (Iowa 1974)). Here, the substance of the 20,000 text messages is "not apparent from the context," so an offer of proof was necessary to preserve error. *See* Iowa R. Evid. 5.103. Because Bean made no offer of proof, error is not preserved, and we do not consider her claim.[4]

---

[4] To the extent Bean attempts to challenge the district court's hearsay ruling with respect to some of the admitted text messages, we find her claim waived because she cites no authority and does not develop her argument beyond a few disjointed statements. *See Vaughan*, 859 N.W.2d at 503 (holding failure to make an argument in support of an issue constitutes waiver); *Tyler*, 867 N.W.2d at 166 n.14 (noting a "passing reference" in a brief constitutes waiver); *cf.* Iowa R. App. 6.903(2)(g)(3) (requiring an appellant's brief contain "[a]n argument section containing the appellant's contentions and the reasons for them with citations to the authorities relied on . . . . Failure to cite authority in support of an issue may be deemed waiver of that issue").

**C. Sufficiency of the Evidence**

Finally Bean argues there is insufficient evidence to support her conviction because the State failed to provide sufficient evidence she intended to kill Glaser. We review challenges to the sufficiency of the evidence for corrections of errors at law. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012).

> In reviewing challenges to the sufficiency of evidence supporting a guilty verdict, courts consider all of the record evidence viewed "in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." "[W]e will uphold a verdict if substantial record evidence supports it." We will consider all the evidence presented, not just the inculpatory evidence. Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt. "Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury [is] free to reject certain evidence, and credit other evidence."

*Id.* (alterations in original) (citations omitted).

> The marshalling instruction[5] required the jury to find:
>
> 1. On or about November 6, 2018, in Floyd County, Iowa, defendant injected Roberta Glaser with insulin.
> 2. By her acts, defendant expected to set in motion a force or chain of events which would cause or result in the death of Roberta Glaser.
> 3. When defendant acted, she specifically intended to cause the death of Roberta Glaser.

---

[5] The marshalling instruction is consistent with Iowa Criminal Jury Instruction 707.21 on attempt to commit murder. Because Bean did not object to this instruction, it is the law of the case for our sufficiency-of-the-evidence review. *See State v. Canal*, 773 N.W.2d 528, 530 (Iowa 2009) ("[Defendant] did not object to the instructions given to the jury at trial. Therefore, the jury instructions become the law of the case for purposes of our review of the record for sufficiency of the evidence.")).

And jury instruction twenty[6] provided:

> As used in these instructions, the term "specific intent" means not only being aware of doing an act and doing it voluntarily, but in addition, doing it with specific purpose in mind.
> Because determining the specific intent of defendant requires you to decide what she was thinking when an act was done, it is seldom capable of direct proof. Therefore, you should consider the facts and circumstances surrounding the act to determine the specific intent of defendant. You may, but are not required to, conclude a person intends the natural results of her acts.

Bean argues "[t]he State presented no actual proof that Bean injected her mother with the insulin in an attempt to end her life," suggesting the evidence is inherently insufficient without direct proof of intent. But jury instruction twenty noted direct proof of intent is uncommon and specifically permitted the jury to "consider the facts and circumstances surrounding the act to determine specific intent." So "actual proof" in the form of direct evidence was not required. Circumstantial evidence was sufficient. *See State v. Nance*, 533 N.W.2d 557, 562–63 (Iowa 1995) ("Intent is a state of mind; it may be established by circumstantial evidence and by inferences drawn from that evidence. . . . Admissions may be implied by the conduct of the defendant subsequent to a crime when such conduct indicates a consciousness of guilt." (citation omitted)).

Bean also points to her own telling of events to challenge the jury's specific intent finding. According to Bean's version of events, she was afraid that her mother was not adequately addressing her cancer diagnosis and dosed her with the insulin so that Glaser would lose consciousness so that Bean could get her to

---

[6] This instruction is consistent with Iowa Criminal Jury Instruction 200.2 on specific intent. Bean did not object to this instruction either so it also becomes the law of the case for our sufficiency-of-the-evidence review. See *Canal*, 773 N.W.2d at 530.

the hospital and she would not remember why she got there. Bean thought this would force Glaser to reckon with her cancer treatment. Bean claims she stayed with Glaser after injecting the insulin to ensure her safety and noted her training as an EMT to support her claim that she knew how to keep Glaser from becoming seriously ill or dying. For example, Bean claims she had honey on hand as a precaution. Thus, Bean claims she had no intent to kill Glaser and only intended to get her to the hospital to be seen by a doctor. But the jury implicitly rejected Bean's version of events, as it was free to do, when it convicted her. *See Sanford*, 814 N.W.2d at 615.

Reviewing all the evidence in the light most favorable to the verdict, we conclude sufficient evidence supports Bean's conviction because a rational jury could reasonably infer from the evidence that Bean intended to set in motion a force or chain of events that would result in Glaser's death and Bean specifically intended to cause Glaser's death. Leading up to November 6, Bean was angry with Glaser over who Glaser wanted to care for B.G. following her death. This conflict served as the catalyst to these events. Bean had expressed to multiple people that she wished Glaser would be hit by a semi, demonstrating Bean's growing anger and resentment toward Glaser and her desire for Glaser to die. Bean knew injecting a person with too much insulin could kill the person. And then on November 6 Glaser injected Glaser with insulin.

After injecting Glaser with insulin, Bean was not nurturing toward Glaser and did not express concern as one would expect had Bean's version of events been true. According to Glaser, Bean made statements revealing her intent to kill Glaser. Glaser testified Bean looked at her and said, "I'm going to put you out of

your misery." Bean's version of this statement was "I can't stand to see you suffer like this." But viewing this version of the statement in a light most favorable to the State, the jury could reasonably find the meaning was the same. When Glaser asked Bean why she was doing this, Bean replied: "You're dying anyway . . . I'm just helping it along." Glaser told her, "I didn't know you hated me this much," to which Bean replied "I didn't either."

Bean also hid Glaser's phone and tablets, which officers later found in between Bean's box spring and mattress. And when Glaser managed to call 911 from her old phone, Bean took that phone from her as well. After Glaser called 911, Bean ran down the hall and hid the insulin vial and a loaded syringe in containers in the laundry room closet. Based on this evidence the jury could reasonably find beyond a reasonable doubt that Bean's intent was not to secure Glaser medical treatment as she claimed. Instead, the facts and circumstances prove Bean specifically intended to cause Glaser's death by injecting her with insulin.

In summary, viewing the evidence in a light most favorable to the State, Bean's acts of injecting Glaser with insulin set in motion a force or chain of events that would end Glaser's life due to hypoglycemia. She verbally expressed malice toward Glaser. Bean tried to prevent Glaser from getting any help by taking her phone and tablet away from her. And when that didn't work, Bean tried to cover up the crime by hiding the insulin vial and the remaining unused syringe. This is sufficient evidence to establish the elements of attempted murder including Bean's specific intent to cause Glaser's death. See *Nance*, 533 N.W.2d at 562–63.

Therefore, we reject Bean's challenge to the sufficiency of the evidence. *See id.*

## III. Conclusion

The district court did not abuse its discretion in denying Bean's motion for a change in venue. Bean did not preserve her evidentiary challenge because she made no offer of proof. And Bean's conviction was supported by sufficient evidence.

**AFFIRMED.**